**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

LEEANN PERALES and ADAM WELLS on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BISSELL HOMECARE, INC.

Defendant.

Civil Action No.:

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiffs Leeann Perales and Adam Wells , individually and on behalf of all others similarly situated, bring this class action against Defendant Bissell Homecare, Inc. ("Bissell") and allege the following based on personal knowledge as to themselves, and on information and belief as to all other matters, including the investigation of counsel.

## INTRODUCTION

1. On April 9, 2026, Bissell recalled approximately 1.7 million Steam Shot OmniReach and Steam Shot Omni steam cleaners after receiving more than 200 reports that the products' attachments were unexpectedly detaching and expelling hot water or steam onto users during ordinary use, including more than 160 reports of burn injuries. This class action seeks redress for the consumers — including Plaintiffs — who purchased these defective products at premium prices in reliance on Bissell's representations of safety, while Bissell knew but failed to disclose the burn hazard.

2. This is a class action lawsuit against the Defendant regarding the manufacture, distribution, and sale of its Bissell Steam Shot OmniReach and Steam Shot Omni steam cleaners (the “Affected Products”), including Model Nos. 4155, 4155L, 4155W, 4155G, 4155D, 4155J, 4155Y, 4155P, 4171, 4171L, 4171W, and 4171F, which were sold with detachable cleaning

attachments prone to failure and capable of unexpectedly releasing hot water or steam during ordinary use.

3. On April 9, 2026, the U.S. Consumer Product Safety Commission ("CPSC") announced a nationwide recall of the Affected Products. The recall identified that the products' attachments can unexpectedly detach and expel hot water or steam during use, posing a serious burn hazard to consumers. The Affected Products were sold nationwide from October 2024 through March 2026 for approximately $9 to $55.[1]

4. Defendant sold the Affected Products for a retail price between approximately $9 and $55.[2]

5. Defendant imported the Affected Products, which were manufactured in China. The Affected Products were manufactured and distributed with a present and uniform defect in their detachable attachment components, which are prone to failure and can unexpectedly detach or expel hot water or steam during use.[3]

6. Plaintiffs and other consumers had a reasonable expectation that the Affected Products would not pose a risk of serious burns, the detachable attachments would remain securely affixed during use, and the products would not unexpectedly expel hot water or steam, thereby exposing users to dangerous heat.[4]

7. Defendant's own product page fails to disclose the danger regarding the danger of the Steam Shot OmniReach, including claims the product delivers powerful, high-pressure steam to clean and sanitize surfaces and tackle tough grime using only water. This implies that the

---

[1] *See BISSELL Recalls Over One Million Steam Shot OmniReach Steam Cleaners Due to Risk of Serious Burn Hazard from Attachments*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/BISSELL-Recalls-Over-One-Million-Steam-Shot-OmniReach-Steam-Cleaners-Due-to-Risk-of-Serious-Burn-Hazard-from-Attachments (last visited Apr. 17, 2026).
[2] *Id.*
[3] *Id.*
[4] *Id.*

Affected Products are safe and fit for their intended use. Defendant failed to disclose that the product's attachments can unexpectedly detach and expel hot water or steam, rendering the product unsafe and unfit for ordinary use and misleading reasonable consumers.[5] *See Figure 1,* infra.




*Figure 1 - Screenshot of BISSELL Steam Shot OmniReach (Model 4171L) product page showing the device and its attachments.*

8. Defendant fails to provide adequate safeguards, instructions, or warnings addressing the defective design and risk of unexpected hot water or steam discharge from the product's attachments. The user guide primarily includes general operating instructions such as filling the tank, depressurizing the unit, and directing steam safely, but does not warn consumers that the attachments can malfunction or unexpectedly release hot water or steam during ordinary use. As a result, the instructions omit critical safety information necessary to alert users to the known burn hazard associated with the product.[6]

9. Defendant's user guide for the Steam Shot™ Omni/OmniReach™ (Series 4171) includes safety-related instructions indicating the product can be used in a controlled and safe

---

[5] *Steam Shot OmniReach Handheld Steam Cleaner & Sanitizer Model No. 4171L*, BISSELL, https://www.BISSELL.com/en-us/product/steam-shot-omnireach-handheld-steam-cleaner-sanitizer-4171L.html (Last visited Apr. 17, 2026).

[6] *Bissell STEAM SHOT OMNI 4171 Series User Manual*, MANUALSLIB, https://www.manualslib.com/manual/3596107/BISSELL-Steam-Shot-Omni-4171-Series.html (last visited Apr. 17, 2026).

manner, such as directing users to point the device in a "safe direction," avoid contact with hot components, and ensure the unit is properly sealed during operation. However, these instructions imply safe operation while failing to disclose that the product's attachments can unexpectedly release hot water or steam during ordinary use.[7]

10. Defendant's user guide omits any instructions or warnings that the detachable attachments have a present and common defect that can cause them to unexpectedly release hot water or steam during use, posing a significant burn risk to consumers. While the manual provides general operating and safety instructions, it does not disclose that the attachments may fail during ordinary use, exposing users to dangerous heat.[8]

11. Those representations regarding safety were false and misleading, and the Affected Products, by Defendant's own admission in the Recall, are not safe because the products' attachments can expel hot water or steam during use, posing a significant risk of serious burn injuries to consumers.[9]

12. Those representations about safety omitted critical safety details.

13. In Defendant's own product demonstrations and instructional materials, the Steam Shot Omni/OmniReach (Series 4171) is shown in active use across a variety of household surfaces, emphasizing its ease of operation and effectiveness in delivering pressurized steam for cleaning. These demonstrations encourage consumers to use the device and its attachments in close proximity during operation, reinforcing a message of safety, control, and reliability. However, these representations omit any disclosure that the product's attachments can unexpectedly release

---

[7] *Id.*
[8] *Id.*
[9] *See BISSELL Recalls Over One Million Steam Shot OmniReach Steam Cleaners Due to Risk of Serious Burn Hazard from Attachments*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/BISSELL-Recalls-Over-One-Million-Steam-Shot-OmniReach-Steam-Cleaners-Due-to-Risk-of-Serious-Burn-Hazard-from-Attachments (last visited Apr. 17, 2026).

hot water or steam during ordinary use, a material hazard later acknowledged in the Recall.[10]

14. Accordingly, Plaintiffs bring this action on behalf of themselves and a Class of similarly situated individuals for equitable relief and to recover damages and restitution for: (i) violations of New York General Business Law ("GBL") § 349, (ii) New York General Business Law ("GBL") § 350, (iii) unjust enrichment, (iv) negligent design, (v) negligent failure to warn, (vi) negligence, and (vii) breach of implied warranty of merchantability.

PARTIES

***Plaintiff Leeann Perales' Experience***

15. Plaintiff Leeann Perales is a resident and citizen of the Bronx, New York.

16. On December 29, 2024, Plaintiff Perales purchased a Bissell Steam Shot OmniReach for approximately $54.43 from Amazon.

17. In purchasing the Bissell Steam Shot OmniReach, Plaintiff Perales sought a product fit for its intended and ordinary use and would not have purchased it, or would have paid less for it, had Bissell disclosed the present and uniform defect and associated safety risks.

18. Defendant's alleged omissions caused the Bissell Steam Shot OmniReach to be sold at an artificial price premium, which Plaintiff Perales paid.

19. Plaintiff Perales later received a recall notice from Amazon regarding the Affected Product, which further confirmed the safety risks associated with its use.

20. As a result of Bissell's alleged conduct, Plaintiff Perales suffered economic loss, including the difference between the amount she paid and the value of the Bissell Steam Shot OmniReach, as received.

---

[10] *Bissell Steam Shot Handheld Steam Cleaner: Multi-Purpose Home Cleaning Demo*, MANUELSPLUS, https://manuals.plus/video/62eaa4b940de382bb6efe99026972f246c2e465a98a4217f9e73acfe09437869? (last visited Apr. 17, 2026).

***Plaintiff Adam Wells' Experience***

21. Plaintiff Adam Wells is a resident and citizen of Lisle, New York.

22. On December 1, 2024, Plaintiff Wells purchased a Bissell Steam Shot OmniReach for approximately $43.19 from Amazon.

23. In purchasing the Bissell Steam Shot OmniReach, Plaintiff Wells sought a product fit for its intended and ordinary use and would not have purchased it, or would have paid less for it, had Bissell disclosed the present and uniform defect and associated safety risks.

24. Defendant's alleged omissions caused the Bissell Steam Shot OmniReach to be sold at an artificial price premium, which Plaintiff Wells paid.

25. Plaintiff Wells later received a recall notice from Amazon regarding the Affected Product, which further confirmed the safety risks associated with its use.

26. As a result of Bissell's alleged conduct, Plaintiff Wells suffered economic loss, including the difference between the amount he paid and the value of the Bissell Steam Shot OmniReach, as received.

***Defendant***

27. Defendant is a corporation organized under the laws of Michigan, with its principal place of business located in Grand Rapids, Michigan. Defendant designs, manufactures, markets, distributes, advertises, warrants, and sells consumer household products, including steam cleaners and related attachments such as the Affected Products, throughout the United States, including in New York. Defendant sells the Affected Products directly to consumers through its website and through third-party retailers and online marketplaces. At all relevant times, Defendant created, controlled, and/or authorized the advertising, labeling, packaging, and representations regarding the safety, quality, and performance of the Affected Products.

## JURISDICTION AND VENUE

28. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class Member is a citizen of a state different from the Defendant.

29. This Court has personal jurisdiction over Defendant because Defendant purposefully directed its commercial activities toward New York and the claims arise from those forum-directed activities. Defendant marketed, distributed, and sold the Affected Products to consumers in New York, including consumers in this District, through its website, online retail channels, and national retailers. Plaintiff Leeann Perales purchased an Affected Product while residing in the Bronx, New York, and suffered economic injury in New York. Defendant therefore has sufficient minimum contacts with New York, and exercising jurisdiction over Defendant comports with due process and traditional notions of fair play and substantial justice.

30. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District. Plaintiff Leeann Perales resides in the Bronx, New York, which is within this District, purchased the Affected Product while residing in this District, received and reviewed Defendant's omissions and representations in this District, and suffered economic injury in this District. Defendant also marketed, distributed, and sold the Affected Products to consumers in this District, including through Amazon and other online retail channels.

## FACTUAL ALLEGATIONS

### I. Defendant Manufactured, Distributed, Marketed, and Sold the Affected Products

31. Defendant designed, manufactured, distributed, advertised, marketed, and sold the Affected Products. The Affected Products were marketed as safe, easy-to-use steam-cleaning

devices intended for routine household use.

32. Defendant engaged in extensive marketing efforts to promote the benefits of the Affected Products. Defendant and its retail partners advertised the steam cleaners through online product pages and demonstrations, highlighting features such as powerful, high-pressure steam output, chemical-free cleaning with water only, and ease of use across a variety of household surfaces. These representations emphasized the products' effectiveness for everyday cleaning tasks and their convenience for consumers.[11]

33. Defendant's marketing materials touted the Affected Products as safe, effective, and capable of delivering controlled, high-temperature steam for household use. For example, Defendant advertised that the product can "clean and sanitize… with 1000 watts of powerful steam" and provides a chemical-free cleaning solution that is "safe to use in homes with kids and pets when used as directed."[12] These representations were misleading because they omitted the material fact that the product's attachments can unexpectedly detach and expel hot water or steam during use, creating a risk of serious burn injuries to consumers during ordinary operation, as later acknowledged in the Recall.[13]

34. Defendant sold the Affected Products through its website and through third-party retailers such as Target, Walmart, and other department and home goods stores nationwide, as well as online through Bissell.com, Amazon.com, HSN.com, and other e-commerce platforms.[14]

---

[11] *Steam Shot Omni Handheld Steam Cleaner & Sanitizer Model No. 4171*, BISSELL, https://www.BISSELL.com/en-us/product/steam-shot-omni-handheld-steam-cleaner-sanitizer-4171.html (last visited Apr. 17, 2026).

[12] *Steam Shot OmniReach Handheld Steam Cleaner & Sanitizer Model No. 4171L*, BISSELL, https://www.BISSELL.com/en-us/product/steam-shot-omnireach-handheld-steam-cleaner-sanitizer-4171L.html (last visited Apr. 17, 2026).

[13] See *BISSELL Recalls Over One Million Steam Shot OmniReach Steam Cleaners Due to Risk of Serious Burn Hazard from Attachments*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/BISSELL-Recalls-Over-One-Million-Steam-Shot-OmniReach-Steam-Cleaners-Due-to-Risk-of-Serious-Burn-Hazard-from-Attachments (last visited Apr. 17, 2026).

[14] *Id.*




*Figure 2 - Screenshot from the CPSC's website showing the recalled BISSELL Steam Shot OmniReach and Omni steam cleaners and the associated burn hazard from attachments.*

## II. <u>**Defendant's Defective Attachment Design Poses a Serious Burn Risk in the Affected Products**</u>

35. Every Affected Product was manufactured and sold with a uniform defect in the design, materials, and workmanship of its detachable attachments and pressure-handling components. As a result, during ordinary, intended use, the attachments can unexpectedly detach or allow hot water or steam to escape, exposing users' hands, arms, and other body parts to a serious and foreseeable risk of burn injuries. The defect existed in every Affected Product at the time of sale, before any consumer use, and independent of whether a particular unit has yet caused a burn.[15]

36. Defendant's marketing materials touted the Affected Products as safe, effective, and capable of delivering controlled, high-temperature steam for household use. For example, Defendant represented the product uses "100% natural steam cleaning" and is "safe to use in homes with kids and pets when used as directed." These representations were misleading because they omitted the material fact the products' attachments can unexpectedly detach and expel hot water

[15] *Id.*

or steam during use, creating a serious burn hazard to users during ordinary operation, as later acknowledged in the Recall.[16]

37. The Affected Products were manufactured and distributed with defective attachment components that can unexpectedly detach, or otherwise allow hot water or steam to escape, during ordinary, intended use. The defect arises from the design and construction of the attachments and the products' pressure-handling components, was present in every Affected Product at the time of sale, and is not the product of consumer misuse, alteration, or isolated failure.

38. Despite this hazard, the Affected Products' user manuals, labeling, packaging, and online materials did not adequately warn consumers that the attachments could fail or expel hot water or steam during ordinary use, or that doing so could cause burn injury. The general safety instructions Bissell provided — directing users to point the device in a safe direction, depressurize the unit, and avoid hot components — addressed the foreseeable risks of ordinary steam-cleaner use but did not disclose the distinct, latent risk of attachment failure.[17]

39. Feasible, safer alternative designs were available at reasonable cost at all relevant times, including, but not limited to: (a) improved attachment locking and sealing mechanisms to prevent detachment or leakage during operation; (b) pressure-regulating or release systems to prevent the unexpected discharge of hot water or steam; (c) enhanced insulation or shielding of external components to reduce user exposure to heat; (d) automatic shut-off or fail-safe features to prevent overheating or unsafe pressure buildup; and (e) clear and conspicuous warning labels regarding the risk of burns associated with attachment failure.

---

[16] *Steam Shot OmniReach Handheld Steam Cleaner & Sanitizer Model No. 4171L*, BISSELL, https://www.BISSELL.com/en-us/product/steam-shot-omnireach-handheld-steam-cleaner-sanitizer-4171L.html (last visited Apr. 17, 2026).

[17] *Bissell STEAM SHOT OMNI 4171 Series User Manual,* MANUELSLIB, https://www.manualslib.com/manual/3596107/Bissell-Steam-Shot-Omni-4171-Series (last visited Apr. 17, 2026).

40. Pre-recall consumer incident reports concerning the Affected Products are consistent with, and illustrative of, the defect alleged herein. For example, in one incident report concerning the Bissell Steam Shot OmniReach (Model 4171L), the consumer reported that during ordinary use — and despite proper handling and secure attachment of components — steam began escaping from multiple points along the tubing and attachment connections, the tubing became extremely hot, and the consumer sustained a second-degree burn. This and similar reports were among the at least 206 incident reports and at least 161 burn-injury reports Defendant received concerning the Affected Products before announcing the Recall on April 9, 2026. Together, these reports reflect the same hazard Defendant ultimately acknowledged in the Recall: the Affected Products' attachments cannot reliably contain and direct pressurized steam during ordinary, intended use.[18]



Images

See more images...

Videos

07172025_514B7898-844C-485A-AEA6-2CD197A46BBE_redacted.mp4
07172025_IMG_1577_redacted.mp4

**Report Summary**

38 YOF used steam cleaner & after few seconds of steam coming out of grout cleaning attachment, steam started coming out of multiple sites in tubing. Tubing became extremely hot. Steam contacted arm of 38 YOF causing 2nd degree burn. She got medical attention.

**Product Details**

**Product Description:** Bissell Steam Shot, Omnireach handheld steam cleaner and sanitizer
**Manufacturer/Importer/Private Labeler Name:** BISSELL Homecare, Inc
**Brand Name:** Bissell
**Model Name or Number:** 4171L
**Serial Number:** 2431406509E

---

[18] *Incident Report Details*, UNITED STATES CONSUMER PRODUCT SAFETY COMMISSION: https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5404740 (last visited Apr. 18, 2026).


**Serial Number:** 2431406509E
**UPC Code:**
**SKU#:**
**Date Manufactured:**
**Retailer:** Amazon
**Retailer State:**
**Purchase Date:** 7/10/2025
**Product Category:** Home Maintenance and Structures
**Product Type:** Other
**Product Code:** Appliances, Other and Not Specified (482)

**Associated Recall**

**Incident Details**

**Incident Description:** I purchased a Bissell Steam Shot off Amazon. The model number is not part of a previous recall. I used the machine to clean grout. After a few seconds of steam appropriately coming out of the grout cleaning attachment, steam started coming out of multiple sites in the tubing including at connections to the machine, connections to the grout cleaning tip, and screw holes. The tubing itself also became extremely hot. When the steam unexpectedly came out of the tubing, it contacted my arm and gave me a second degree burn. I later double checked that all attachments were tightened and the machine was being used according to directions.
**Incident Date:** 7/11/2025
**Incident Location:** Home/Apartment/Condominium

*Figure 3 - A review on "SaferProducts.gov" report showing steam leakage and burn injury from a BISSELL Steam Shot OmniReach (Model 4171L).*

41. Additional consumer incident reports further reflect burn injuries associated with the Affected Products prior to the Recall. In one such report, a consumer using a Bissell Steam Shot OmniReach (Model 4171L) reported being burned by the nozzle head during ordinary use. The manufacturer acknowledged the product was subject to a recall, demonstrating Defendant's awareness of the burn hazard.[19]

## III. <u>Defendant's False and Misleading Advertising Campaign Misrepresented the Safety of the Affected Products and Induced Consumer Purchases</u>

42. As shown in the Figures above, Defendant and its retail partners promoted the Affected Products through online product pages and instructional demonstrations, including content on Bissell's website and retailer platforms and other online channels, highlighting the products' high-temperature steam output, chemical-free cleaning capability, and ease of use.[20] These materials emphasized features such as powerful steam delivery through attachments,

---

[19] *Id.*
[20] *Steam Shot Omni Handheld Steam Cleaner & Sanitizer Model No. 4171, BISSELL*, https://www.BISSELL.com/en-us/product/steam-shot-omni-handheld-steam-cleaner-sanitizer-4171.html (last visited Apr. 17, 2026).

versatility across household surfaces, and convenient handling during operation, often depicting close-hand interaction with steam output and cleaning tools. Yet, at no point did these advertisements disclose that the known risk that the attachments could unexpectedly detach or expel hot water or steam during use, posing a burn hazard to users' hands, arms, or other exposed areas, as later identified in the Recall. Instead, the visuals and representations conveyed a message of safety, effectiveness, and convenience that was inconsistent with the serious hazard later acknowledged by Defendant.[21]

43. When it sold the Affected Products, Defendant's consumer-facing marketing was materially misleading and induced consumers to purchase and use the products under a false sense of safety. Defendant advertised and emphasized features such as powerful, chemical-free steam cleaning and ease of use, while portraying the products as safe for routine household use.[22] By touting the effectiveness and convenience of the steam output and attachment design, while concealing the known risk that the attachments could unexpectedly detach or expel hot water or steam during use, Defendant misled consumers regarding the true safety risks associated with the Affected Products.

44. Nowhere does Defendant, on the product page or in the user guide, disclose that the material risk the Affected Products' attachments may unexpectedly detach or expel excessively hot water or steam during use, creating a foreseeable burn hazard to users. This omission concerns

---

[21] See *BISSELL Recalls Over One Million Steam Shot OmniReach Steam Cleaners Due to Risk of Serious Burn Hazard from Attachments*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/BISSELL-Recalls-Over-One-Million-Steam-Shot-OmniReach-Steam-Cleaners-Due-to-Risk-of-Serious-Burn-Hazard-from-Attachments (last visited Apr. 17, 2026).

[21] *Id.*

[22] *Bissell STEAM SHOT OMNI 4171 Series User Manual*, BISSELL, https://www.BISSELL.com/en-us/product/steam-shot-omnireach-handheld-steam-cleaner-sanitizer-4171L.html (last visited Apr. 17, 2026).

a defect present in all Affected Products at the time of sale.[23]

45. Defendant marketed the Affected Products to ordinary consumers through its own website at bissell.com, through third-party online marketplaces including Amazon.com, Walmart.com, Target.com, and HSN.com, and through national retailers including Walmart and Target. Defendant's marketing represented that the Affected Products were safe for routine household use and emphasized features designed to communicate safety to consumers — powerful steam output, chemical-free cleaning using only water, and ease of operation. Defendant's representations of safety were material to consumers' purchasing decisions and enabled Defendant to charge a price premium for the Affected Products that reasonable consumers would not have paid had Defendant disclosed the latent defect and burn hazard.

46. Consumers reasonably relied on Defendant's omissions and representations that the Affected Products were safe and suitable for routine household use. Defendant's marketing, including representations that the products provide "powerful steam cleaning," "clean and sanitize," and use "100% natural steam" safe for use in homes, reinforced the perception the Affected Products were carefully designed and safe for ordinary use.[24]

47. As a result, consumers, including Plaintiffs, were induced to pay for the Affected Products based on Defendant's representations of safety, effectiveness, and convenience, as well as assurances that the products were suitable for routine household use. Defendant's conduct influenced consumer decision-making by creating the false impression the Affected Products were safe, when in fact they posed a significant burn risk due to attachments that could unexpectedly

---

[23] *Bissell STEAM SHOT OMNI 4171 Series User Manual*, MANUALSLIB, https://www.manualslib.com/manual/3596107/BISSELL-Steam-Shot-Omni-4171-Series.html (last visited Apr. 17, 2026).

[24] *Steam Shot OmniReach Handheld Steam Cleaner & Sanitizer Model No. 4171L*, BISSELL, https://www.BISSELL.com/en-us/product/steam-shot-omnireach-handheld-steam-cleaner-sanitizer-4171L.html (last visited Apr. 17, 2026).

detach or expel hot water or steam during use, a defect that existed at the time of purchase and was later confirmed by the nationwide CPSC recall.[25]

## IV. Consumers Have Been Harmed By Defendant's False and Misleading Representations

48. Defendant knew, or should have known, the advertising and labeling claims made on the Affected Products are false and misleading.

49. The Defendant made representations such as the products provide "powerful steam cleaning," "clean and sanitize," and use "100% natural steam" safe for use in homes, reinforcing the perception the Affected Products were carefully designed and safe for ordinary use.[26]

50. Defendant knew, or should have known, the Affected Products were not as safe as represented, given prior complaints, incident reports, and safety concerns involving similar steam-generating products, as well as its knowledge of the risks associated with high-temperature steam and pressurized systems prior to the recall.

51. Defendant knew, or should have known, the advertising for the Affected Products misrepresented or omitted material facts concerning safety.

52. Defendant knew, or should have known, that the representations and statements made through its labeling and advertising would mislead consumers to purchase the Affected Products instead of competitors' cheaper products based on a false belief that the Affected Products were safer.

53. Had Defendant disclosed the true risks of the Affected Products, Plaintiffs would

---

[25] *See BISSELL Recalls Over One Million Steam Shot OmniReach Steam Cleaners Due to Risk of Serious Burn Hazard from Attachments*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/BISSELL-Recalls-Over-One-Million-Steam-Shot-OmniReach-Steam-Cleaners-Due-to-Risk-of-Serious-Burn-Hazard-from-Attachments (last visited Apr. 17, 2026).

[26] *Steam Shot OmniReach Handheld Steam Cleaner & Sanitizer Model No. 4171L*, BISSELL, https://www.BISSELL.com/en-us/product/steam-shot-omnireach-handheld-steam-cleaner-sanitizer-4171L.html (last visited Apr. 17, 2026).

not have purchased the Affected Product, or would have paid less for it, had the Affected Products been truthfully and accurately labeled as including a present and uniform defect at the time of sale.

## V. The Affected Products Have Been the Subject of a Recall

54. On April 9, 2026, Defendant announced a voluntary recall of approximately 1.7 million Affected Products in coordination with the U.S. Consumer Product Safety Commission. The recall covered Affected Products that Defendant had designed, imported, distributed, and sold to consumers nationwide between October 2024 and March 2026, at retail prices ranging from approximately $9 to $55. In announcing the recall, Defendant acknowledged that the Affected Products' attachments can unexpectedly detach and expel hot water or steam during use, posing a serious burn hazard to consumers. By that date, Defendant had received at least 206 reports of hot water or steam unexpectedly escaping from the Affected Products' attachments and at least 161 reports of burn injuries, including a second-degree burn, all received while Defendant continued to design, market, and sell the Affected Products without disclosing the hazard. The defect that gave rise to the recall existed in every Affected Product as designed, manufactured, and sold, and was independent of any consumer misuse, alteration, or isolated component failure.[27]

55. Defendant has advised consumers to immediately stop using the recalled Affected Products and to contact Bissell to receive a remedy, which includes a free replacement attachment.[28] The estimated delivery time for the replacement is 4-5 weeks.

56. There is no indication from Bissell that the new replacement is better or different from the replaced product.

---

[27] See *BISSELL Recalls Over One Million Steam Shot OmniReach Steam Cleaners Due to Risk of Serious Burn Hazard from Attachments*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/BISSELL-Recalls-Over-One-Million-Steam-Shot-OmniReach-Steam-Cleaners-Due-to-Risk-of-Serious-Burn-Hazard-from-Attachments (last visited Apr. 17, 2026).

[28] *Id.*

57. The recall directed consumers to immediately stop using the Affected Products and contact Bissell to receive a free replacement attachment. The consumers are required to install the replacement attachment themselves.[29]

58. The Recall remedy is inadequate in three independent respects. First, it provides no monetary relief: Defendant offers no refund, no replacement of the steam-cleaner unit itself, and no compensation for consumers who discarded their Affected Products in response to the publicized burn hazard. Second, it shifts the burden of remediation onto consumers: rather than providing professional installation or replacement, Defendant requires consumers to install replacement attachments themselves on Affected Products that Defendant has now publicly conceded were unsafe as originally sold. Third, the replacement attachments do not eliminate the underlying defect: they are component substitutions that leave intact the same steam-cleaner units and pressure-handling architecture that gave rise to the burn hazard in the first place.

59. Bissell's recall remedy is inadequate because it does not provide consumers with a refund, replacement product, statutory damages, or any meaningful compensation for the diminished value of the Affected Products. Instead, Bissell offers only a free replacement attachment while instructing consumers to continue using the same steam cleaners. On its face, that remedy does not restore purchasers to the position they would have occupied absent the defect. Consumers paid for products that were represented and sold as safe and fit for ordinary household use, not for products that would later require replacement components to be used safely.

60. The recall is also inadequate because Bissell's provision of a replacement attachment does not eliminate the underlying hazard-producing conditions. By offering replacement attachments intended to address the risk of hot water or steam discharge, Bissell

[29] *BISSELL® Steam Shot OmniReach and Steam Shot Omni Steam Cleaner Recall*, BISSELL, https://recall.bissell.com/steamshot-2026 (last visited Apr. 27, 2026).

acknowledges that the original attachments were defective. However, this remedy merely mitigates the risk rather than fully eliminate it, as consumers are instructed to replace components while continuing to use the same steam cleaners. These measures indicate that the risk of hot water or steam being expelled during use is addressed through component replacement and continued consumer handling, rather than a complete redesign of the product to eliminate the hazard.[30]

## TOLLING

61. The statutes of limitations applicable to Plaintiffs' and the Classes' claims were tolled by Bissell's conduct and Plaintiffs' and Class Members' delayed discovery of their claims.

62. As alleged above, Plaintiffs and members of the Classes did not know, and could not have known, the Affected Products were dangerous. Plaintiffs and members of the Classes could not have discovered Bissell's unlawful conduct with reasonable diligence.

### A. Discovery Rule and Latent Defect

63. To the extent any applicable statute of limitations would otherwise bar Plaintiffs' or Class Members' claims, those statutes are tolled under the discovery rule. The defect alleged in this Complaint — that the Affected Products' detachable attachments are prone to failure and can unexpectedly detach or expel hot water or steam during ordinary use — was, and remains, a latent condition not reasonably discoverable through ordinary use or inspection. The defect lies in the design and components of the attachments and pressure-handling mechanisms internal to the Affected Products and is not visible to consumers upon purchase or in the course of ordinary, intended use.

64. Plaintiffs and Class Members did not know, and through the exercise of reasonable diligence could not have known, of the existence of the defect, the burn hazard it created, or the

[30] *Id.*

facts giving rise to their claims, until, at the earliest, Defendant's announcement of the Recall on April 9, 2026. Before that date, Defendant had not publicly disclosed the defect, the burn hazard, or at least 206 consumer incident reports and at least 161 reports of burn injuries that Defendant had received concerning the Affected Products.

65. To the extent any limitations period would otherwise be measured from tender of delivery rather than from discovery, including under U.C.C. § 2-725, the future-performance exception applies. Defendant's two-year Express Warranty, by its terms, extends to defects in materials or workmanship existing at the time of purchase and constitutes a warranty of future performance for the duration of the warranty period. Discovery of the breach, therefore, could not have occurred before discovery of the defect itself, which was concealed until the Recall.

**B. Continuing Wrong**

66. To the extent applicable, the continuing-wrong doctrine further tolls the limitations period. Defendant's deceptive marketing and sale of the Affected Products without disclosure of the latent defect continued throughout the Class Period (October 2024 through March 2026) and constituted recurring, ongoing wrongful conduct. Each sale of an Affected Product without disclosure of the defect was a separate wrong that gave rise to a new claim accruing at the time of that sale.

**C. Inadequacy of the Recall to Provide Constructive Notice**

67. Defendant's April 9, 2026 Recall does not extinguish the tolling described in this section as to Class Members who have not received actual notice of the Recall. On information and belief, a substantial portion of purchasers of Affected Products have not received, and will not receive, the Recall communications, due to the absence of product-registration data for many purchasers, secondhand transfers of the Affected Products to subsequent owners, and ordinary

attrition of contact information over time. As to such purchasers, the limitations period remains tolled until they receive actual notice of the defect through the Recall communications or otherwise.

## CLASS ACTION ALLEGATIONS

68. Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for personal/household use within any applicable statute of limitations period (the "Nationwide Class").

69. Plaintiffs bring this action on behalf of themselves and the following New York subclass:

> All persons who purchased one or more of Defendant's Affected Products in the State of New York for personal/household use within any applicable statute of limitations (the "New York Subclass").

70. Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, any entities in which Defendant or its parents and any entities in which Defendant have a controlling interest, and its current or former employees, officers, and directors.

71. Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands, if not millions, of consumers. The precise number of Class Members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

72. Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. The common and legal questions include, but are not limited to, the following:

a. Whether the Affected Products posed an unreasonable risk of unexpected overheating and causing burns;

b. Whether Defendant's marketing omitted material defects/hazards;

c. Whether the recall demonstrates a feasible alternative design;

d. Whether the marketing, advertising, packaging, and labeling for the Affected Products were false, misleading, and/or deceptive;

e. Whether Defendant violated the state consumer protection statutes alleged herein;

f. Whether Defendant was unjustly enriched; and

g. The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

73. Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased one of the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

74. Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interests of the

members of the Class.

75. Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

76. Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### Violation of New York Deceptive Acts and Practices Law
### New York General Business Law § 349
### (On behalf of Plaintiffs and the New York Subclass)

77. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

78. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

79. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiffs and the New York Subclass Members seek monetary damages against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Affected Products.

80. Defendant's deceptive acts and practices were likely to mislead a reasonable consumer acting reasonably under the circumstances. A reasonable consumer purchasing a handheld steam cleaner marketed as "safe to use in homes with kids and pets," providing "100% natural steam cleaning," and delivering "powerful steam cleaning" for routine household use would not expect that the product's attachments could unexpectedly detach or expel hot water or steam during ordinary use, exposing the consumer to a serious burn hazard. Defendant's failure to disclose this material safety information rendered its consumer-facing representations materially misleading to the reasonable consumer.

81. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Affected Products to consumers.

82. Defendant's improper consumer-oriented conduct, including omitting and failing to disclose that the Affected Products' attachments can unexpectedly detach and expel hot water or steam during normal use, is misleading in a material way as it, inter alia, induced Plaintiffs and the New York Subclass to purchase Defendant's Affected Products and to use them when they otherwise would not have. Defendant made these untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

83. Plaintiffs and the New York Subclass were injured in purchasing the Affected Products that were mislabeled. Accordingly, Plaintiffs and the New York Subclass received less than what they bargained and paid for.

84. Defendant's advertising and Affected Products' packaging and labeling induced Plaintiffs and the New York Subclass to buy Defendant's Affected Products.

85. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a), and Plaintiffs and the New York Subclass have been damaged thereby.

86. Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs and the New York Subclass are entitled to recover (a) their actual damages or fifty dollars, whichever is greater, for each violation; (b) in the Court's discretion, three times the actual damages up to one thousand dollars per violation, based on Defendant's willful and knowing violation of GBL § 349; (c) reasonable attorneys' fees as prevailing parties; and (d) injunctive relief restraining Defendant from continuing to engage in the deceptive acts and practices alleged herein, including but not limited to injunctive relief requiring Defendant to provide adequate corrective notice and meaningful remedial measures beyond the inadequate Recall described in paragraphs 58-60.

87. As a result of Defendant's recurring, “unlawful” deceptive acts and practices, Plaintiffs and the New York Subclass are entitled to monetary, statutory, compensatory, and treble damages, interest, and attorneys' fees and costs.

88. This defect was present in all Affected Products at the time of sale, regardless of whether a consumer has yet experienced a failure or injury.

**COUNT II**
**Violation of New York False Advertising Law**
**New York General Business Law § 350**
**(On behalf of Plaintiffs and the New York Subclass)**

89. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

90. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

91. False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

92. N.Y. Gen. Bus. Law § 350a (1) provides, in part, as follows:

93. The term "false advertising," including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising was misleading, it should be taken into account, not only the representations made by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertising failed to reveal facts material to the conditions usual and customary of the Affected Products.

94. Defendant's advertising and marketing of the Affected Products was misleading in a material respect. Defendant represented that the Affected Products were safe and effective for household use, while failing to disclose that the Affected Products' attachments can unexpectedly detach and expel hot water or steam during use, posing a serious burn hazard to consumers.

95. Plaintiff Wells saw and relied on Defendant's representations concerning the safety, effectiveness, and ordinary household use of the Bissell Steam Shot OmniReach in connection with his purchase of the Affected Product from Amazon on or about December 1, 2024. Specifically, Plaintiff Wells viewed Defendant's product listing for the Bissell Steam Shot OmniReach on Amazon (content that Defendant created, controlled, and authorized), including

representations that the Affected Product provides powerful steam cleaning using only water, is suitable for routine cleaning across a variety of household surfaces, and is safe for use in homes when used as directed. Plaintiff Wells relied on Defendant's representations in deciding to purchase the Affected Product. Plaintiff Wells would not have purchased the Affected Product, or would have paid substantially less for it, had Defendant disclosed that the Affected Product's attachments could unexpectedly detach or expel hot water or steam during ordinary use.

96. Plaintiff Perales saw and relied on Defendant's representations concerning the safety, effectiveness, and ordinary household use of the Bissell Steam Shot OmniReach in connection with her purchase of the Affected Product from Amazon on or about December 29, 2024. Specifically, Plaintiff Perales viewed Defendant's product listing for the Bissell Steam Shot OmniReach on Amazon (content that Defendant created, controlled, and authorized), including representations that the Affected Product provides powerful steam cleaning using only water, is suitable for routine cleaning across a variety of household surfaces, and is safe for use in homes when used as directed. Plaintiff Perales relied on Defendant's representations in deciding to purchase the Affected Product. Plaintiff Perales would not have purchased the Affected Product, or would have paid substantially less for it, had Defendant disclosed that the Affected Product's attachments could unexpectedly detach or expel hot water or steam during ordinary use

97. Plaintiffs and the New York Subclass were injured by the reliance on Defendant's labeling, packaging, and advertising, which induced the Plaintiffs' purchasing of the Affected Products that were mislabeled and misleading. Accordingly, Plaintiffs and the New York Subclass received less than the value paid for.

98. Defendant's advertising, packaging, and Affected Products' labeling induced Plaintiffs and the New York Subclass to buy Defendant's Affected Products.

99. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

100. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

101. Defendant made the material omissions described in this Complaint in its advertising and on the Affected Products' packaging and labeling.

102. Defendant's material omissions impacted consumers at large. Moreover, all consumers who purchased the Affected Products were and continue to be exposed to the Defendant's material misrepresentations. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiffs and the New York Subclass are entitled to monetary, statutory, compensatory, and treble damages, interest, and attorneys' fees and costs.

103. This defect was present in all Affected Products at the time of sale, regardless of whether a consumer has yet experienced a failure or injury.

## COUNT III
## UNJUST ENRICHMENT
## (On behalf of Plaintiffs and the Class)

104. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

105. This Count is pleaded in the alternative. To the extent Plaintiffs and Class Members have an adequate remedy at law under any other Count of this Complaint, the unjust-enrichment claim asserted in this Count is pleaded only as an alternative theory of recovery, pursuant to Rule 8(d)(2) of the Federal Rules of Civil Procedure. Plaintiffs may pursue alternative legal and equitable theories of recovery and need not elect among them at the pleading stage.

106. Plaintiffs and Class Members conferred benefits upon Defendant. Plaintiffs and

Class Members paid money for Defendant's Affected Products that they would not have purchased had they known the Affected Products' attachments could unexpectedly detach and expel hot water or steam during use, posing a serious burn hazard to consumers.

107. Defendant unjustly retained the benefits conferred upon Defendant by Plaintiffs and Class Members.

108. Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products were unsafe and could not perform as advertised. If Plaintiffs and Class Members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiffs and Class Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

109. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

110. This defect was present in all Affected Products at the time of sale, regardless of whether a consumer experienced a failure or injury.

## COUNT IV
**Negligent Design**
**(On behalf of Plaintiffs and the Class)**

111. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

112. Defendant had a duty to exercise reasonable care in the design of the Affected Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

113. The Affected Products' design invites users to grip and maneuver the attachments assembly in close proximity during operation, placing their hands in the zone of danger, and the attachments can unexpectedly detach and expel hot water or steam during use, posing a serious burn hazard to consumers.

114. Feasible, safer alternative designs were available at reasonable cost, including, but not limited to, (a) improved thermal insulation for the attachments to prevent excessive heat buildup; (b) pressure-regulating mechanisms to control the release of hot water or steam; (c) automatic shut-off or safety lock features to prevent unintended discharge; (d) heat-resistant or insulated grips on the attachments assembly to reduce burn risk; and (e) clear and prominent warning labels on the Affected Products regarding the risk of overheating and hot water expulsion.

115. Defendant breached its duty by adopting and selling the above Affected Products without proper safeguards.

116. This defective design was a substantial factor in causing an unexpected detachment and expulsion of hot water or steam during use, posing a serious burn hazard to consumers, as alleged by Plaintiffs and the putative Class Members.

117. Defendant had actual and constructive knowledge of the defect well before the recall announcement, including consumer complaints, internal testing, and incident data accumulated over years. Defendant continued to market and sell the Affected Products without adequate warning or redesign.

118. To the extent the economic loss rule may otherwise apply, it does not bar recovery in this Count. Defendant's defective design creates a foreseeable risk of physical injury to persons (namely, burn injuries to users' hands, arms, faces, and other body parts) that exists separately from any economic harm associated with the Affected Products themselves. As Defendant has

acknowledged through the Recall, at least 161 consumers have reported burn injuries from the Affected Products, including at least one second-degree burn. The Class includes consumers who have suffered such physical injury and consumers who remain at foreseeable risk of suffering such injury. The duty of care Defendant owed to Plaintiffs and Class Members arose independently of any contractual or commercial relationship and was grounded in the foreseeable risk of personal injury that Defendant's defective design created. Plaintiffs and Class Members seek under this Count, in addition to economic damages, all damages recoverable in tort, including damages for foreseeable physical injury arising from the design defect.

119. Plaintiffs and the Class suffered economic loss, proximately caused by Defendant's negligent design.

120. This defect was present in all Affected Products at the time of sale, regardless of whether a consumer experienced a failure or injury.

**COUNT V**
**Negligent Failure To Instruct Or To Warn**
**(On behalf of Plaintiffs and the Class)**

121. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

122. Defendant owed a duty to provide adequate warnings and instructions regarding non-obvious risks known or reasonably knowable at the time of sale, and when appropriate, to provide post-sale warnings as knowledge of hazards emerged.

123. The risk the attachments can unexpectedly detach and expel hot water or steam during use, posing a serious burn hazard to consumers, placing users' hands in proximity to a burn hazard, was not open and obvious to ordinary consumers at the time of purchase.

124. Defendant knew or, in the exercise of reasonable care, should have known of the

hazard through pre-market testing, consumer complaints, and product-use data. Post-sale, Defendant received and acknowledged customer reports and incident data describing burn events in which the attachments can unexpectedly detach and expel hot water or steam during use yet failed to timely provide adequate warnings, instructions, or interim safety guidance, and did not initiate the Recall until at least 206 incidents had occurred.

125. If Defendant disclosed the attachments can unexpectedly detach and expel hot water or steam during use, Plaintiffs would not have purchased the Affected Product, would not have used it in the manner he did, and/or would have taken the identified precautions Defendant outlined.

126. Defendant breached its duties by (a) omitting clear pre-sale warnings about the risk of the attachments can unexpectedly detach and expel hot water or steam; (b) failing to provide adequate instructions regarding safe handling, protective measures, and proper operation to minimize burn risk; and (c) failing, post-sale, to promptly warn past purchasers or provide interim use instructions, safety modifications, or repairs once the hazard became evident.

127. To the extent the economic loss rule may otherwise apply, it does not bar recovery in this Count. Defendant's defective design creates a foreseeable risk of physical injury to persons (namely, burn injuries to users' hands, arms, faces, and other body parts) that exists separately from any economic harm associated with the Affected Products themselves. As Defendant has acknowledged through the Recall, at least 161 consumers have reported burn injuries from the Affected Products, including at least one second-degree burn. The Class includes consumers who have suffered such physical injury and consumers who remain at foreseeable risk of suffering such injury. The duty of care Defendant owed to Plaintiffs and Class Members arose independently of any contractual or commercial relationship and was grounded in the foreseeable risk of personal

injury that Defendant's defective design created. Plaintiffs and Class Members seek under this Count, in addition to economic damages, all damages recoverable in tort, including damages for foreseeable physical injury arising from the design defect.

128. The absence of adequate warnings and instructions was a substantial factor in causing harm to Plaintiffs and Class Members during ordinary and intended use.

129. This defect was present in all Affected Products at the time of sale, regardless of whether a consumer experienced a failure or injury.

**COUNT VI**
**Negligence**
**(On behalf of Plaintiffs and the Class)**

130. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

131. Defendant owed Plaintiffs and the Class a duty to exercise reasonable care in the design, testing, manufacture, instructions, and warnings for its Affected Products, including a post-sale duty to warn or instruct to take reasonable steps once hazards related to attachments overheating and the unexpected expulsion of hot water or steam became known.

132. Defendant breached these duties by, among other things: (a) adopting a design in which there is a risk the attachments can unexpectedly detach and expel hot water or steam without adequate insulation, pressure control, or safety mechanisms; (b) failing to conduct or act on reasonable testing regarding the risk of overheating and uncontrolled discharge; (c) failing to provide adequate pre-sale warnings and instructions regarding safe handling and the risk of burns; and (d) failing, post-sale, to timely warn prior purchasers, issue corrective instructions, or implement a prompt repair or retrofit after receiving consumer complaints and injury reports.

133. The risks of attachments unexpectedly detaching and expelling hot water or steam

were foreseeable to Defendant, and safer, feasible alternatives and precautions were available at reasonable cost, including improved thermal insulation for the attachments, pressure-regulating and flow-control mechanisms, automatic shut-off features, and clear, prominent warnings and instructions.

134. Defendant's negligence was a substantial factor in causing the attachments to unexpectedly detach and expel hot water or steam, resulting in burn injuries suffered by Plaintiffs and the Class during ordinary and intended use. Such harm was a reasonably foreseeable consequence of the breaches alleged.

135. To the extent the economic loss rule may otherwise apply, it does not bar recovery in this Count. Defendant's defective design creates a foreseeable risk of physical injury to persons (namely, burn injuries to users' hands, arms, faces, and other body parts) that exists separately from any economic harm associated with the Affected Products themselves. As Defendant has acknowledged through the Recall, at least 161 consumers have reported burn injuries from the Affected Products, including at least one second-degree burn. The Class includes consumers who have suffered such physical injury and consumers who remain at foreseeable risk of suffering such injury. The duty of care Defendant owed to Plaintiffs and Class Members arose independently of any contractual or commercial relationship and was grounded in the foreseeable risk of personal injury that Defendant's defective design created. Plaintiffs and Class Members seek under this Count, in addition to economic damages, all damages recoverable in tort, including damages for foreseeable physical injury arising from the design defect.

136. As a direct and proximate result, Plaintiffs and the Class sustained damages, including diminution in value.

137. This defect was present in all Affected Products at the time of sale, regardless of

whether a consumer experienced a failure or injury.

**<u>COUNT VII</u>**
**Breach of Implied Warranty of Merchantability**
**U.C.C. § 2-314**
**(On behalf of Plaintiffs and the Class)**

138. Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

139. Defendant is a merchant that designed, manufactured, marketed, and sold the Affected Products for ordinary household use.

140. An implied warranty arose that the Affected Products were fit for the ordinary purposes for which such goods are used, including the safe generation and controlled release of steam during ordinary operation without posing a burn hazard.

141. The Affected Products fail to meet multiple independent merchantability standards under U.C.C. § 2-314(2):

a. The Affected Products do not pass without objection in the trade under the contract description, U.C.C. § 2-314(2)(a), because they contain a uniform, latent defect that has resulted in a nationwide recall of approximately 1.7 million units;

b. The Affected Products are not fit for the ordinary purposes for which such goods are used, U.C.C. § 2-314(2)(c), because they pose a serious burn hazard during the ordinary, intended use of a handheld steam cleaner for routine household cleaning;

c. The Affected Products are not adequately contained, packaged, and labeled as the agreement may require, U.C.C. § 2-314(2)(e), because their packaging, labeling, and accompanying user guide fail to disclose the latent

attachment defect or the resulting burn hazard; and

d. The Affected Products do not conform to the promises and affirmations of fact made on their container or label, U.C.C. § 2-314(2)(f), because Defendant's product packaging, labeling, and marketing materials represented the Affected Products as safe and fit for ordinary household use when in fact they contained the latent defect alleged herein.

142. Each of the foregoing constitutes an independent breach of the implied warranty of merchantability.

143. The Affected Products were not merchantable at the time of sale because the design permits and invites users to handle the attachments' assembly during operation, while the attachments can unexpectedly detach and expel hot water or steam, exposing users to burn hazards during foreseeable, ordinary use.

144. Defendant knew or should have known of this hazard through pre-market testing and post-sale complaints and reviews, yet continued sales without an adequate design fix or effective instructions or warnings.

145. Plaintiffs and Class Members purchased the Affected Products from Defendant or its authorized retailers. To the extent privity is required, it is satisfied by purchases through Defendant's retail channels and/or because purchasers were intended third-party beneficiaries of Defendant's warranties.

146. Any purported warranty disclaimer or limitation is unenforceable because it was not conspicuous, was unconscionable given the undisclosed safety defect, and any limited remedy failed its essential purpose.

147. Defendant had actual notice from consumer complaints and injury reports.

148. Defendant's breach was a proximate cause of injuries and damages, including physical burns, overpayment, out-of-pocket and replacement costs, and diminution in value.

149. This defect was present in all Affected Products at the time of sale, regardless of whether a consumer experienced a failure or injury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

b. Awarding Plaintiffs and the Classes compensatory damages;

c. An order requiring Defendant to implement a court-supervised repair and corrective-notice program for all Affected Products;

d. Corrective advertising and disclosure statements at points of sale and on Defendant's website;

e. Disgorgement and restitution of monies received from Class Members as a result of the defective and misrepresented products;

f. Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

g. For declaratory and equitable relief, including restitution and disgorgement;

h. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

i. Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

j. Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

k. Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to cure inadequate recall and notification processes, correct its manufacturing and marketing practices, and to comply with the relevant consumer protection statutes;

l. Awarding pre-judgment and post-judgment interest; and

m. Granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: April 27, 2026

**LEVI & KORSINSKY LLP**

By: */s/ Mark S. Reich*

Mark S. Reich (MR-4166)
Michael N. Pollack (6173272)
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
Email: mpollack@zlk.com

*Counsel for Plaintiffs*